## SUPREME COURT.

### The People agt. The Metropolitan Bank.

A bank organized under the " act to authorize the business of banking," passed April 18th, 1838, have authority to receive, from depositors and dealers, uncurrent bank notes or bills of other banks, at a discount (the legal rate).

*It seems*, that there is no difference between receiving such bills on deposit at a discount, and *purchasing* them generally at a discount.

*Quere?* Whether if a bank is not one of *circulation*, but of discount and deposit only, it has the power to purchase or receive uncurrent bank bills at a discount. In other words, whether the organization in such instance is so complete as to confer banking powers?

*At Chambers, July* 1852. The defendant moved on the 3d inst. to vacate an injunction granted by Justice WATSON, on 21st June last, restraining the Metropolitan Bank from buying or receiving on deposit, bank paper, at an amount less than purports to be due on its face, and from redeeming bank paper at less than par, except where it is the redemption agent of the bank issuing such paper.

At the same time the plaintiff having served an order to show cause, applied for a further injunction, restraining the defendant from transacting any longer any kind or description of banking business. Both motions were argued at the same time. The facts sufficiently appear in the opinion of the court to show what questions were decided.

L. S. CHATFIELD, *Att'y Gen'l*, N. HILL JR. and CHARLES O'CONOR, *for Plaintiff*.

JAS. L. GRAHAM, EDWARD SANDFORD and DANIEL LORD, *for Defendant*.

PARKER, Justice.—I must leave entirely out of consideration the transactions of Edward Belknap, on whose complaint the information in this cause was filed, the relation of which, in detail, has occupied so much space in the defendant's affidavit. Whether or not this suit has grown out of a controversy between the brokers and the defendant. as is alleged, or however unworthy may have been the conduct or the motives of the complainant, in

deciding these motions, I can look only at the question whether the business transactions of the defendant are, or are not authorized by law.

Objections have been taken on both sides to the sufficiency of the pleadings. As I intimated to the counsel on the argument, I shall hold the allegations to be sufficiently specific. Either party desiring a more particular statement, could have resorted to a demurrer. But on this motion, as on a trial, the facts alleged are put in issue, and the objection that the allegations are too general is not tenable.

The defendant objects that Edward Belknap ought to have been joined as one of the plaintiffs, under § 434 of the Code, which provides that when an action shall be brought by the attorney general, on the relation or information of a person having an interest in the question, the name of such person shall be joined with the people as plaintiff. In this case, Edward Belknap made the affidavit annexed to the complaint, on which the injunction was allowed. He was probably the informant, on whose suggestion or solicitation the action was commenced; but he appears to have no interest in the result, except that the defendant interferes with his business as a broker, and particularly in compelling redemption of the bills of his Government Stock Bank at Ann Arbor. Every other broker in Wall street may have a similar and perhaps some of them an equal interest. But that is not an interest that makes it necessary to name him as one of the plaintiffs. Nor does the fact that he is one of the stockholders in the Metropolitan Bank affect this question. That interest is probably on the side of the defendant. The section of the Code above cited is applicable only to a case in which the action is substantially for the benefit of the relator, as when it is brought to establish a claim to a public office. Section 430 gives ample power to the attorney general to commence the suit in the name of the people only, on leave granted by the Supreme Court, or a judge thereof, which leave was duly obtained in this case.

Another objection made by the defendant's counsel is, that the subject is not a proper one for the exercise of equitable jurisdiction, and they cite the case of The Attorney General vs. The

Utica Insurance Company (2 *John. Ch. R.* 371), where, on an information filed by the attorney general, it was held that the Court of Chancery had no jurisdiction to restrain persons from carrying on the business of banking in violation of the statute, and an injunction for that purpose was refused. That case was decided in 1817, and afterwards by the 17th section of an act passed 21st April 1825, entitled " an act to prevent fraudulent bankruptcies by incorporated companies, to facilitate proceedings against them, and for other purposes," jurisdiction was conferred upon the court of Chancery, to restrain by injunction, on the application either of the attorney general or of any creditor of an incorporated bank, whenever it should be shown to the court that the bank was insolvent or had violated any of the provisions of its charter. Under that act the power was exercised (Attorney General vs. Bank of Chenango, *Hopk. Ch. R.* 598). This jurisdiction was retained by the Revised Statutes (2 *R. S.* 2d ed. 558, § 37), which provides that on a bill filed by the attorney general in the Court of Chancery, the chancellor shall have power to restrain by injunction any corporation from assuming or exercising any franchise, liberty or privilege, or transacting any business not allowed by the charter of such corporation. This section is now in force, except that the jurisdiction has been transferred from the Court of Chancery to this court; and it is under this section that the application for an injunction is made. It is not necessary in such case to show specifically that the commission of the act sought to be restrained *pendente lite* would produce injury to the plaintiff, under section 219 of the Code. In a suit by the people, the public wrong arising from a violation of the statute implies an injury during its continuance. If, therefore, it is shown that the defendant has assumed or exercised franchises, or transacted any business not allowed by its charter, this is a proper case for restraining it by injunction.

These motions come before me on complaint and answer, and on additional affidavits read on both sides. It is shown that the defendant is a banking association organized in April 1851, under the " act to authorize the business of banking," passed April 18, 1838, and the amendments thereto. The defendant's place

of business is in the city of New York, and its capital, originally $250,000, has been increased to two millions of dollars.

It is charged in the complaint, that the defendant has employed its capital in buying, at a price less than the sums payable on their faces respectively, the bills and notes intended for circulation as money, issued by banks, banking associations and individual bankers of this state and other states, which, at the place of such buying, are not current or redeemable at par, and disposing of the same by sale or return thereof for redemption to the bank, banking association or individual banker, issuing the same respectively. The defendant in its answer, admits that it has received from the depositors and dealers with the Metropolitan Bank, such bills and notes issued in this state at a discount or abatement by way of exchange, of not more than one fourth of one per cent, and at no greater discount or abatement, than that at which the banks and banking associations issuing such bills and notes were allowed by law to redeem or pay the same at the city of New York: and the defendant admits that it has received from depositors and dealers with the Metropolitan Bank, such bills and notes of other states, at a discount or abatement not exceeding the current, reasonable and true rate, or difference of exchange, between such bills and bills payable in the city of New York; and the defendant denies that it has bought or received said bills and notes either of this state or of other states, otherwise than as thus admitted.

No evidence is produced before me of any act of the defendant beyond what is thus admitted. There is then no controversy as to the fact that the defendant has been in the practice of receiving uncurrent bank notes at a discount; and the principal question presented for decision is as to the legality of such practice. This question is to be examined on the facts as admitted by the defendant, viz: that the defendant has been in the practice of receiving such bills or notes from its depositors and dealers, and that it has not otherwise purchased them. But I do not see how a right to so receive them, can be distinguished from the right to buy them generally at a discount. To receive them on deposit would probably be the manner in which the business would be transacted in either case; or at least, it might be such.

If the notes are received at a discount on deposit, the avails may be afterwards applied in payment of a note falling due at the same bank, or they may be drawn out on the check of the depositor. The notes may thus be received by the bank in payment of a debt, or they may be bought by the bank. How the avails are to be applied, may perhaps be uncertain at the time of the deposit. And the question after all, is whether a bank has the right to receive such uncurrent bank notes at a discount. If they may be so received, the avails may be disposed of by the bank in any lawful way. If, however, a legal distinction can be taken between buying such uncurrent notes at a discount and receiving them from depositors and dealers, the defendant is to have the benefit of it, as the facts admitted present only the latter case.

The defendant can exercise no powers except those expressly granted, or such as are incidental to the execution of the granted powers (Bank of Augusta vs. Early, 13 *Peters R*. 587). These powers are defined in the 18th section of the " act to authorize the business of banking," as follows: " Such association shall have power to carry on the business of banking, by discounting bills, notes and other evidences of debt, by receiving deposits, by buying and selling gold and silver bullion, foreign coins and bills of exchange, in the manner specified in their articles of association, for the purposes authorized by this act; by loaning money on real and personal security; and by exercising such incidental powers as shall be necessary to carry on such business." Then follows the authority to appoint and remove officers.

Is the receiving of uncurrent notes at a discount authorized under the power to " discount bills, notes and other evidences of debt?" It is said that that clause of the 18th section is only applicable to the discounting of paper not yet due, and that the discount intended is the taking out of the interest for the time the note has to run before due. But even in the case of discounting bank paper not due, the fair rate of exchange as well as the interest may be deducted, when the note is payable at a different place. Although uncurrent bank bills are due upon their face, yet they are payable at a distant place, and distance imports

time. So far, therefore, as the ability of the person taking them to realize the avails is concerned, they stand upon the same footing as a note not due. They are not available to the holder till he can have time to present them to the bank issuing them for payment, and the expense of transmitting them is equivalent to the exchange deducted on discounted bank paper payable at a distant place. Taking such uncurrent bank bills at less than their face, may be properly termed discounting them. It is taking them at a " discount." Such is the language employed in the complaint to denote such deduction. The word " discount," is also used in the same sense in the 8th section of the " act relating to the redemption of bank notes," passed May 4, 1840, and in the 4th section of the " act to amend the several acts relating to incorporated banks, banking associations and individual bankers," passed April 17, 1851. I think the transactions complained of were a discounting within the language and meaning of the statute.

There can be no doubt that the description of paper permitted to be discounted is broad enough to include bank bills. Even if a limited signification is to be given to " bills," as meaning bills of exchange, and to " notes," as meaning bank paper on time—to which I do not assent—the other clause, viz., " other evidences of debt," is too general to admit of question. A bank is authorized to discount any evidence of debt. There is nothing in the statute showing any intention to distinguish between paper on demand and paper on time. On the contrary, another statute on the subject of banking has declared that " the term ' evidence of debt ' shall be construed to embrace every written instrument or security for the payment of money, importing on its face the existence of a debt, whether under seal or otherwise " (1 R. S. 3d ed. 731, § 67).

It weighs nothing in the argument to say that the purchase of uncurrent bank notes has generally been the business of bill brokers, any more than it would to argue that the discounting of bank paper on time was not legitimate banking business, because it had been generally done by individuals. The question of power depends entirely on the statute, under which, I think, banking associations are at liberty to receive uncurrent bank

bills at a discount.   And such, it appears, has been the practical construction heretofore given to the statute.   It is proved before me by the affidavits of persons long engaged in the business of banking, that on this subject the custom and practice of bankers has been uniform, and hitherto unquestioned.   On this point no contradictory affidavits are produced.

The right to receive bank notes issued by a distant bank, at a *discount which shall reduce them to their current value at the place where taken,* seems indispensable to the transaction of business.   Such notes must either be taken at their actual value, or they can not be taken at all.   It is not expected they will be taken by banks at par, when they are worth less than par in market.   It might, for a short time, best promote the circulation of the country banks thus to exclude their bills from banks in the city of New York; but it would tax heavily the commercial and industrial interests of society, and bring about a state of things not contemplated by our present system, and one that, to prevent great mischief, would demand an entire and immediate change of legislative policy.

The statutes regulating banking seem to imply that a bank may receive depreciated bank bills at their current value.   The third section of the " act concerning foreign bank notes," passed May 7, 1839, prohibits any banking association from lending or paying out, for paper discounted or purchased by them, any *bank bill or note, or evidence of debt,* which is not received at par by the said association for debts due to the said association.   This fairly implies that bank bills may be received below par.   It is only the paying out that is prohibited—it being expected that the bank so taking them will return them to the bank issuing them, or to its agent, for redemption.   It is here worthy of remark, that in the section last referred to, the words " *bill, note or evidence of debt,*" are used to include uncurrent bank bills, in the same sense I have given them in my construction of the first clause of the eighteenth section of the general banking law of 1838, where the same words are used.

The statutes regulating the redemption of bank notes at a discount, by agencies established in New York and Albany or Troy, have no bearing upon the question I am discussing.   These

statutes make it obligatory on each of the country banks to establish an agency, and authorize each to redeem through such agency at one-fourth of one per cent; and they forbid the purchase by any bank of its own notes at an amount less than what purports to be due thereon, at any other place than at and through such agency. The objects of these provisions were two fold: first, to prevent a depreciation of such bank bills below one-fourth of one per cent; and secondly, to prevent a bank making a profit out of a depreciation of its own paper. The statute in no way interferes with the purchase or receiving of such paper by other banks, at its current value, which, under the present system, can not be at a discount of more than one-fourth of one per cent.

It was charged in the complaint that the defendant had been engaged in redeeming country bank notes of this state for banks for which it was not the legally appointed redeeming agent. But that charge is fully denied in the answer, and is entirely unsupported by evidence. Redemption implies more than a mere purchase or receiving of the notes at a discount. It implies that it is done in behalf of, and, to some extent at least, for the benefit of the bank whose notes are so purchased or received; in other words, that it is an agent of the bank, though unauthorized by law for such purchase.

The question I have discussed is the important and controlling one in the controversy, out of which the action has arisen. Another point was however made in behalf of the plaintiff on the argument, viz: that the defendant is not a bank of circulation, and that no organization can be complete, so as to confer banking powers on an association, unless it is a bank of circulation as well as of discount and deposit. This point, if properly before me, presents two questions for determination; one of fact, viz: whether the defendant is a bank of circulation; and one of law, viz: whether it must necessarily be a bank of circulation to enable it to enjoy the franchise of banking. It is evident this point was not in contemplation by the parties when they prepared for these motions. Nothing is said on the subject in the pleadings, or in the affidavit served for the purpose of these motions. In an affidavit sworn to on the day of the argument, Edward Belknap states that within the last preceding twenty-four hours,

he had made inquiry at the bank department and learned that the defendant had not received from the comptroller or from the superintendent of the bank department any circulating notes. This affidavit not having been served on the defendant, can not be used on the application for a further injunction. It can only be used, if it all, in answer to the other motion to vacate the injunction now in force. And I am by no means certain that it would be available for that purpose; for the plaintiff ought not now to be permitted in answer to the application made to vacate the injunction, to make a new point entirely different from any thing suggested in the complaint or in the affidavit on which the injunction was allowed, and inconsistent with the grounds there taken. The injunction was allowed on the ground that the defendant, being a bank, was transacting other than banking business. The additional point now made is that the defendant is not a bank, and therefore has no right to transact banking business.

On the argument, however, an affidavit made on the same day by James McCall, the President of the Metropolitan Bank, was read, by which it was shown that immediately after the organization of that bank, the sum of one hundred thousand dollars was deposited by it with the Comptroller as a security for the circulating notes which should be issued by said bank, and that an order had been given by the bank to the head of the bank department for an issue of the bills of said bank, and that as soon as they could be got ready for such purpose, they would be put in circulation. It is not stated when the order was given, or what has been the cause of the delay.

By a statute passed April 12, 1848, amendatory of the act authorizing the business of banking, it was enacted that all banking associations shall be banks of discount and deposit, as well as of circulation. The evil this statute was designed to remedy, was not that banks of discount and deposit were established, which were not banks of circulation; but the contrary, viz: that banks of circulation only were in existence which had no banking house, and transacted no business of discount or deposit. The object of the statute was to break up the practice of issuing circulation merely for the purpose of redeeming at a discount that

afforded a profit.   I do not myself see the evil of allowing the establishing of banks of discount and deposit only, which are not banks of circulation.   The language of the statute may perhaps be broad enough to sustain the legal position taken by the plaintiff's counsel.   If so, however, some fixed amount of circulation might be specified, so that a mere nominal circulation should not be deemed a compliance with the requisition.

But whatever may be the true construction of the statute, I can not feel warranted, on the facts before me, and on a mere chamber motion, to issue an injunction that shall entirely suspend all business operations of the defendant.   I am not satisfied that even under the construction claimed, the defendant is amenable to any such severe penalty.   It seems the requisite sum was deposited with the comptroller immediately on the organization of the bank, as security for its circulation, and that such circulation is now to be issued.   If there has been a misapprehension of the law hitherto in this respect, from which no one has suffered, the correction can be readily made.   The neglect does not vitiate the previous organization.   It could in no way promote the public interests, but would be greatly to their detriment, to close the doors of the bank and wind up its affairs, because of the inadvertent omission of an act not jurisdictional, and which the defendant is ready to remedy, when those concerned in it would have the right at once to reorganize as a new institution.   I shall not, therefore, award the injunction prayed for on this motion, but shall leave the plaintiff to claim such an injunction on the trial of the cause, when the facts can be more fully developed if, by amending the pleadings or otherwise, the question can be then properly raised.

The motion to vacate the injunction must be granted, and the motion for a further injunction denied.